

# THE ATTORNEY GENERAL

## OF TEXAS

Gerald C. Mann
~~XXXXXXXXXXSHEPPERD~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Bascom Giles,
Commissioner
General Land Office
Austin, Texas

Opinion No. O-1185

Re: Authority surface owner
of land under Relinquish-
ment Act to amend lease.

Dear Sir:

This department acknowledges receipt of your let-
ter of July 25, 1939, in which you state that under Scrap
File No. 12,924, the State awarded an area of land in Cam-
eron County under the Act of April 3, 1919; that on July 7,
1938, Gatewood Newberry, the surface owner, individually and
as agent of the State, executed an oil and gas lease with a
drilling agreement covering a portion of the above mentioned
land. Other facts are stated by you in your letter, as
follows:

"This lease and drilling contract
provide for the drilling of three wells to a
depth of ten thousand feet, unless oil or gas
should be discovered in paying quantities at a
lesser depth, or unless salt, granite, heaving
shale, uncontrollable flow of salt water, or other
formation be encountered at a lesser depth which
could render further drilling impracticable.

"Under the terms of the lease and within the
time provided therein, the first ten-thousand-foot
test has been projected thereon, and at a depth of
approximately 7,500 feet there was encountered an
uncontrollable flow of salt water which rendered
it necessary to abandon the well. A log of this
well, sworn to by the operators and showing same
carried to a depth of 7,584 feet, was filed in
this office July 15, 1939, and on the same date
there was received from the Pure Oil Company, as
associate contractors, letter stating that said
well, being the Gatewood Newberry No. 1, was
abandoned and plugged on June 28, 1939.

"The information as to the uncontrollable
flow of salt water reached at approximately 7,500
feet was given to this office in a letter from
Vinson, Elkins, Weems & Francis dated July 22, 1939,

said firm being attorneys for the owner and lessor, Gatewood Newberry.

"Under the lease contract the operators have six months from the date of abandonment of the first well in which to begin another ten-thousand-foot test, but since an uncontrollable flow of salt water was encountered in the first well at a lesser depth, it is represented that the parties at interest feel that to project another ten-thousand-foot test, which would cost approximately twice as much as the projection of a 7,500-foot test, would be impracticable andfoolish. This difference in cost is, of course, occasioned by the difference in required diameter of the two classes of wells. On this account they desire to have the lease amended so as to provide for the drilling of a series of 7,500-foot wells in lieu of the second of the ten-thousand-foot wells provided for in the contract."

Based on the facts above set out, you propound four questions. In view of the answer we have given to the first question, we do not deem it necessary to write on the other three questions. The first question is as follows:

"Does Gatewood Newberry, as agent for the State of Texas, under the provisions of the Relinquishment Act, have the power to execute an amendment to such lease which would be binding on the State of Texas, the owner of the minerals?"

This question involves a construction of Articles 5367 and 5368, Revised Civil Statutes of Texas, 1925, which constitute a part of the Relinquishment Act of 1919. The effect of this Act has been thoroughly discussed by the Supreme Court in the cases of Greene vs. Rob'son. 117 Tex. 516, 8 S.W. (2d) 655, and Empire Gas & Fuel Company vs. State, 121 Tex. 138, 47 S.W. (2d) 265, wherein the court held that the effect of the Act is that the surface owner is authorized to lease land for the development of oil and gas, and the State is entitled to receive one-half of the bonus, royalties, and rentals (with a minimum of 1/16th royalty and ten cents per acre rental) received by virtue of a lease executed by the surface owner.

There can be no question as to the authority of the surface owner to determine in the first instance the terms and conditions under which he may execute an oil and gas lease of the land involved, subject to the limitations hereinbefore and hereinafter noted. Article 5368 specifically provides that the owner is authorized to lease the land for oil and gas "upon such terms and conditions as

such owner may deem best, subject only to the provisions hereof". In other words, the State requires the surface owner to lease the land for oil and gas under terms which he deems best, subject only to the other provisions of the statute with reference to paying the State its proper share of the bonus, royalty, and rental, and other provisions of the statute such as those pertaining to the drilling of off-set wells and forfeiture of rights under the lease. In other words, the surface owner cannot enter into any lease or contract which in any manner changes the provisions of the law with reference to the execution of leases. We also believe that in entering into a contract which he may "deem best", the surface owner is required to exercise good faith with the State and also not be negligent in securing a fair bonus and rental.

The statutes do not require the surface owner to enter into any specific contract for the drilling of wells to any particular depth, and apparently contemplates that a lease executed by the surface owner will be the ordinary oil and gas lease, subject, of course, to the provisions of the statute already pointed out. In view of this situation, it is our opinion that since the surface owner has authority to lease the land upon such terms and conditions as he deems best, and since he is not required to enter into any specific contract pertaining to the depth to which wells may be drilled, but has done so, he also has authority, if he deems it best, to amend the lease so as to change the terms with reference to the depth to which wells may be drilled. In other words, we believe that it is the duty of the surface owner, in acting as agent of the State, to act in good faith, and not enter into any agreement which will prejudice the rights of the State in securing the proper development of the minerals owned by the State.

Under the 1931 Sales Act (Vernon's Article 5421c), land is sold with the reservation of 1/16 of all minerals, except sulphur, as a free royalty. The State is not entitled to receive any part of the bonus or rental. See Wintermann vs. McDonald, 129 Tex. 275, 102 S.W. (2d)167.

While the State owns all the minerals in the lands sold under the Act of 1919, yet the only practical difference between the Acts of 1919 and 1931 is that under the 1919 Act the State receives one-half of all the royalty, bonus, and rentals with a minimum of 1/16th royalty and ten cents per acre rental, while under the 1931 Act the State receives a free royalty of 1/16th of the minerals, except 1/8th of the sulphur, and does not receive any part of the bonus and rentals. Under the 1931 Act, the State owns an interest in the minerals, and in the case of Wintermann vs. McDonald, supra, the question arose as to what procedure should be

followed in making a mineral lease under the 1931 Act; that is, whether the surface owner alone could make the lease, or whether it was necessary for the State to join in same. The court construed the Act so as to authorize the surface owner to make the lease without the joinder of the State, and in the opinion stated:

> "The owner of the land acts as the agent of the State in making the mineral leases. This calls for the exercise of a duty by the land owner to the State. The land owner owes to the State good faith in the performance of the duty which he has assumed, and he should discharge that duty with prudence and good faith, and with ordinary care and diligence."

We see no reason why the same rule should not apply to the owner of the surface under a lease executed under the Relinquishment Act, and since the State does not require that leases executed under said Act shall provide for the depth to which wells shall be drilled, we believe that this is a question to be determined by the owner of the land, and if he concludes that it is to the best interest of himself and the State to amend the lease, and he amends it in such form as to show good faith which he owes to the State, and it is done with prudence and with ordinary care and diligence, the amendment of the lease is authorized. Of course, if there is any consideration paid for the amendment to the lease, the State will be entitled to one-half of such consideration.

Yours very truly

ATTORNEY GENERAL OF TEXAS

s/ H. Grady Chandler

By

H. Grady Chandler
Assistant

HGC:FG-cg

Approved Aug. 22, 1939
First Assistant Attorney General
s/ W. F. Moore

Approved Opinion Committee
by BWB, Chairman